# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**J.P. MORGAN TRUST COMPANY,**
**N.A., a national banking association,**
**as trustee,**
        **Plaintiff,**

    v.                                          Case No. 04-C-0158

**U.S. BANK, N.A., a national banking**
**association,**
        **Defendant and Third-Party**
        **Plaintiff,**

    v.

**JENNIFER EASTON,**
        **Third-Party Defendant and**
        **Counterclaimant**

## DECISION AND ORDER

Before me is a motion by J.P. Morgan Trust Company, N.A. ("Morgan") to reconsider portions of my August 9, 2005 decision in the above matter. Before addressing Morgan's motion, I will briefly recount the case's factual and procedural background.

### I. BACKGROUND

In 1999, Jennifer Easton ("Easton") assisted the Cheyenne River Sioux Tribe in establishing a commercial buffalo farm. The Tribe formed a corporation ("the Corporation") to own and operate the farm. To finance the enterprise, the Corporation sold $4.65 million in bonds and granted the bondholders a security interest in the buffalo herd and slaughterhouse equipment and a mortgage on certain land. In addition, at Easton's request, U.S. Bank, N.A. ("the Bank") issued an irrevocable standby letter of credit in the

amount of $2.2 million. The letter stated that it would expire on May 15, 2000 but contained an evergreen clause providing that it would automatically renew for successive one-year periods until May 15, 2003, unless sixty days prior to the end of a period the Bank stated that it would not permit renewal.

The bondholders established a trust to hold their security interests and appointed Morgan as trustee, and the Corporation entered into a trust agreement with Morgan pursuant to which Morgan became the holder of the security interests and the beneficiary of the letter. The trust agreement provided that if the Corporation defaulted on the bond payments, Morgan had to look first to the herd and equipment, second to the mortgage and third to the letter of credit. Further, Morgan could draw on the letter only to the extent necessary to cure the default. However, if the Bank declined to permit the letter to automatically renew for any period before May 15, 2003, Morgan could draw on the full amount of the letter, even if the Corporation did not default. The letter recited the security arrangements set forth in the trust agreement and stated that Morgan could draw upon it by submitting a sight draft accompanied by documentary evidence indicating either that the Corporation defaulted on its bond payments and that Morgan foreclosed on the herd and equipment, or that the Bank had declined to permit the letter to automatically renew.

The Corporation defaulted on its obligation to the bondholders, and Morgan did not foreclose on the herd or equipment or on its mortgage. On May 14, 2003, one day before the letter expired, Morgan submitted a sight draft for the full amount of the letter and certified that the Bank declined to permit it to automatically renew. The Bank had not sent Morgan a non-renewal notice, but Morgan asserted that the letter itself constituted a non-renewal because it included an expiry clause stating that "in any event, this letter of credit

shall not be automatically extended beyond May 15, 2003, the final expiration date."
(Letter of Credit at 2) (capital letters omitted).[1] The Bank disagreed and declined to honor Morgan's draw.

Morgan then commenced the present action, alleging that the Bank wrongfully dishonored its draw. The Bank impleaded Easton, seeking indemnification for any judgment that Morgan might obtain against it and for its costs and attorney fees. Easton in turn alleged that the Bank mishandled the letter and that Morgan, by erroneously certifying that the Bank refused to permit the letter to automatically renew, breached a presentment warranty to her.

On August 9, 2005, I concluded that the expiry clause in the letter did not constitute a notice of non-renewal, that Morgan fraudulently certified that the Bank declined to permit the letter to renew and that the Bank properly dishonored Morgan's draw. I further concluded that by certifying that the Bank did not permit the letter to renew, Morgan breached its presentment warranty to Easton and must reimburse her for damages she sustained. I left open the issue of whether Easton could recover her attorney fees from Morgan and asked for additional briefs.

## II.  STANDARD OF REVIEW

My decision of August 9, 2005 did not terminate the action and therefore "is subject to revision at any time." Fed. R. Civ. P. 54(b). Nevertheless, under the law of the case doctrine, courts should be reluctant to reopen issues once decided. Agostini v. Felton, 521 U.S. 203, 236 (1997). However, if a court is convinced that it mistakenly decided a

---

[1]The letter is attached to Darren K. Cottriel's Declaration as Exhibit 14  [R. 68].

question or if it concludes that it decided a question outside the adversarial issues presented by the parties, it may revise its decision. Id.; see also Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990).

### III. DISCUSSION

Morgan first asks me to revise my determination that it committed fraud under Wis. Stat. § 405.114(2). Morgan contends that neither the Bank nor Easton pleaded or argued that it committed fraud, that it did not have an opportunity to brief the fraud issue and that by addressing the issue, I ventured outside the adversarial issues presented by the parties. Neither the Bank nor Easton opposes Morgan's request. Therefore, I will withdraw that portion of the August 9 decision that concluded that Morgan committed fraud.

However, I reiterate my conclusion that the Bank properly dishonored Morgan's draw. Wis. Stat. § 405.114(1) requires an issuer to "honor a draft or demand for payment <u>which complies with the terms of the relevant credit</u> regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary" (emphasis added). Thus, pursuant to the statute, an issuer need not honor a draft that does not comply with the letter of credit.

Here, Morgan erroneously certified that the Bank declined to permit the letter to automatically renew when in fact the Bank did not do so. I cannot reasonably construe the expiry clause in the letter as a notice of non-renewal. The expiry clause merely indicated that the letter would finally expire on May 15, 2003, a date that Morgan had been aware of since 1999 when the Bank issued the letter. See, e.g., AXA Assurance, Inc. v. Chase Manhattan Bank, 770 A.2d 1211, 1214 (N.J. Super. 2001) (stating that an evergreen clause causes a letter to automatically renew absent notice to the contrary while an expiry

4

clause specifies when a letter expires); see also Francis v. Pennpower, Inc., 52 Fed. Appx. 595 (4th Cir. 2002) (explaining that the expiration of a letter on its own terms does not trigger an obligation on the part of the issuer to pay under the letter).

Further, in dishonoring Morgan's draw, the Bank did not violate the independence principle provided in Wis. Stat. § 405.114(1) and discussed in my August 9 decision, which bars the issuer of a letter from considering whether the beneficiary performed the underlying contract. This is so because in determining that it had not refused to permit the letter to renew, the Bank did not have to consider the underlying transaction but had only to look at its own records. See, e.g., New Braunfels Nat. Bank v. Odiorne, 780 S.W. 2d 313, 317 (Tex. App.1989) (stating that there "is a logical distinction between discrepancies that relate to the business of the underlying transaction and those that relate to the banker's own business").

Morgan also asks me to revise my decision that it breached a warranty to Easton. Easton argues that Morgan did breach its warranty to her and asks me to require it to pay her attorney fees. The parties disagree as to whether Minnesota or Wisconsin law governs this dispute. Under Minnesota law, the beneficiary of a letter may only breach a presentment warranty if the presentment is honored, whereas Wisconsin law does not require the presentment to be honored. Compare Minn. Stat. § 336.5-110(a) with Wis. Stat. § 405.111(1). Moreover, under Minn. Stat. § 336.5-111(3), a prevailing party on a breach of warranty claim may recover its attorney fees, but may not do so under Wisconsin law. In a diversity case such as this one, I apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under Wisconsin choice of law rules, the law of the forum presumptively applies unless there are non-forum

5

contacts that are of greater significance.  Wilcox v. Wilcox, 26 Wis. 2d 617, 634 (1965).
Even then, forum law continues to be a primary concern of a forum court, for courts are
instruments of state policy.  Heath v. Zellmer, 35 Wis. 2d 578, 597-98 (1967).  Moreover,
courts generally resolve issues relating to letters of credit under the law of the state in
which the issuing or confirming bank is located or where performance under the letter
occurs.  Burton V. McCullough, Letters of Credit, (MB) § 1.05 (2005) (citing Bancode
Vizcaya, S.A. v. First Nat'l Bank of Chi., 514 F. Supp. 1280, 1286 (N.D. Ill. 1981)).  In the
present case, the relevant contacts are with Wisconsin.  The Bank's predecessor issued
the letter in Wisconsin, and Morgan attempted to draw on the letter in Wisconsin.  Thus,
Wisconsin law clearly applies to issues involving the letter.

Wis. Stat. § 405-111(1) provides that "unless otherwise agreed the beneficiary by
transferring or presenting a documentary draft or demand for payment warrants to all
interested parties that the necessary conditions of the credit have been complied with."
Further, under § 405.111(1), the warranty runs in favor of "all interested parties," of which
Easton surely is one.  Relying on Revised Article 5 of the Uniform Commercial Code,
Morgan argues that to prevail on her breach of warranty theory against Morgan, Easton
must show not only that Morgan presented the certification but that the Bank honored it.
See U.S.C. 5-110(a) cmt. 1.  However, Wis. Stat. § 405.111 plainly provides that a
beneficiary warrants that its assertions in support of its attempt to obtain payment under
a letter are true.  Further,  at all times relevant to the present case, Wisconsin had not yet
adopted revised Article 5, thus, it is of no help to Morgan.[2]  In sum, the facts of the present

---

[2] Revised Article 5 takes effect in Wisconsin on July 1, 2006.  See 2005 Wis. Act. 213.

case are very similar to those in Mellon Bank, NA v. Gen. Elec. Credit Corp., 724 F. Supp. 360, 363 (W.D. Pa. 1989), in which the court held that a beneficiary's erroneous certification, even if made in good faith, constituted a breach of warranty.  See also Pubali Bank v. City Nat'l Bank, 676 F.2d 1326, 1329 (9th Cir. 1982).  Thus, Morgan breached its warranty to Easton and Easton may recover the damages she incurred as a result.

However, Easton may not recover her attorney fees.  Wis. Stat. § 405.111 does not authorize a prevailing party to recover fees nor does Wisconsin case law.  See Lightcap v. Steenberg Homes, Inc., 160 Wis. 2d 607, 619 (1991).

### IV.  CONCLUSION

Therefore,

**IT IS ORDERED** that Morgan's request that I revise my August 9 decision in the above matter is **GRANTED IN PART AND DENIED IN PART** as specified above.

Dated at Milwaukee, Wisconsin this 11 day of May, 2006.

/s_____
LYNN ADELMAN
District Judge